**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SANDRA FREEMAN,** | ) | |
| **Plaintiff,** | ) | **Case No. 15 C 11888** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **OCWEN LOAN SERVICING, INC.,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

After plaintiff Sandra Freeman obtained a bankruptcy discharge of her personal debt, including the mortgage loan on her home, she continued to live in her home. According to Freeman, defendant Ocwen Loan Servicing obtained servicing rights on the discharged mortgage loan and then repeatedly called Freeman on her cell phone and sent her a series of documents that it characterizes as statements and Freeman characterizes as bills. Freeman contends that Ocwen's calls and written communications are illegal efforts to collect a discharged debt that violate the Telephone Consumer Protection Act ("TCPA") (Count I), 47 U.S.C. § 227, the Fair Debt Collection Practices Act ("FDCPA") (Count II), 15 U.S.C. § 1692, and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1, *et seq*. In contrast, Ocwen denies that it attempted to collect on the discharged debt and asserts that Freeman should have known that it was communicating information about the amounts she could pay to prevent Ocwen from foreclosing based on the security interest it retained in Freeman's home despite the discharge. Ocwen has moved to dismiss Freeman's FDCPA and ICFA counts pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Ocwen's motion is denied in its entirety.

# I. BACKGROUND[1]

In 2003, Freeman obtained a mortgage loan from Wells Fargo that was secured by real property located in Romeoville, Illinois. In 2004, American Home Mortgage obtained servicing rights to Freeman's loan. Freeman alleges that she had "many disputes" with American Home Mortgage, "including but not limited to, the improper application of payments and improper charges made by [American Home Mortgage] to the subject loan." (Dkt. 1, Compl., ¶ 9.) American Home Mortgage repeatedly sent Freeman dunning letters stating that she was in default even though she was actually current on her payments.

On July 6, 2006, Freeman filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois. She listed American Home Mortgage as a scheduled creditor. On December 18, 2006, the bankruptcy court issued an order discharging Freeman's debts, including her personal liability on the mortgage loan held by American Home Mortgage. Despite the discharge, from 2006 to 2013, American Home Mortgage sent dunning letters to Freeman stating that she was in default and remained liable for the loan.

On April 1, 2013, Ocwen acquired the servicing rights to Freeman's discharged mortgage.[2] Ocwen obtained Freeman's cellphone number by unknown means and called her an

---

[1] The following facts are drawn from the plaintiffs' complaint and are accepted as true for the purpose of the defendants' motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

[2] Ocwen asks the court to consider its Form 8-K (an SEC reporting form that Ocwen attaches to its motion to dismiss) to establish that it merged with American Home Mortgage and thus acquired Freeman's loan pursuant to a merger. A court may consider documents attached to a motion to dismiss if "they are referred to in the plaintiff's complaint and are central to [her] claim." *See, e.g.*, *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). This exception is "aimed at cases interpreting, for example, a contract" and "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary

-2-

average of two times per day from April 2013 through November 2014, for a total of at least

1,200 calls.  Freeman answered approximately 360 of these calls.  When she answered,

approximately three seconds passed between when she said "hello" and when the Ocwen agents

introduced themselves.  During these conversations, Freeman advised Ocwen of her bankruptcy

discharge and asked Ocwen to stop calling her.  During one call, on September 18, 2014,

Freeman spoke to an Ocwen agent for 40 minutes about her bankruptcy discharge.  According to

Freeman, the agent stated that the calls were "proper" because Freeman's "bankruptcy was

dismissed."  (Dkt. 1, Compl., ¶ 31.)

        In addition, between April 2013 and December 2015, Ocwen sent numerous written

communications to Freeman that she characterizes as dunning letters and Ocwen characterizes as

"account statements" that purportedly state that they are "for informational purposes only."[3]

---

judgment."  *Id.*; *see also Smith v. Lakin*, No. 15-CV-860-NJR-DGW, 2016 WL 1730584, at *1
(S.D. Ill. May 2, 2016).  Thus, the presence of an allegation about Subject X in a complaint does
not give the defendant license to attach documents about Subject X to a motion to dismiss.
Accordingly, the court will consider Freeman's allegation that Ocwen obtained servicing rights
for her loan but exclude the SEC form that Ocwen provided that presents its position as to how
this came about.  In reaching this conclusion, the court considered whether to take judicial notice
of the SEC filing since it is a public record and generally, public records are subject to judicial
notice.  *See, e.g.*, *White v. Keely*, 814 F.3d 883, 886 n.2 (7th Cir. 2016).  However, this rule
allows the court to take judicial notice of the existence of an SEC disclosure form, as opposed to
the content of the form, for the truth of the matters asserted therein.  *City of Sterling Heights
Police & Fire Ret. Sys. v. Kohl's Corp.*, No. 13-C-1159, 2015 WL 1478565, at *4 (E.D. Wis.
Mar. 31, 2015) (collecting cases addressing requests for judicial notice of SEC forms).  Thus, the
content of the SEC form is not properly before the court at the motion to dismiss stage.

        [3]  Both Freeman and Ocwen attach a group of these statements to the complaint and
motion to dismiss, respectively.  (Dkt. 1 at Ex. E; Dkt. 14 at Ex. 2.)  Freeman's group exhibit
contains the front of her selected communications, while Ocwen's group exhibit contains the
front and back sides of its selected communications.  The reverse of the communications
provided by Ocwen contains information in small type, including a box titled "Important
Bankruptcy Information."  At least one communication, dated May 3, 2013, is in both sets of
submissions.  (Dkt. 1 at PageID # 31; Dkt. 14 at PageID # 134.)  Given that Freeman supplied the

Freeman alleges that the communications seek payment on her discharged loan.  Some of the letters advise that failure to pay will lead to negative credit reporting, some attach payment coupons with payment instructions and information about late charges, and some include the language, "Past Due Amounts DUE IMMEDIATELY."  (Dkt. 1, Compl., ¶¶ 34-36.)

On November 17, December 5, and December 16, 2015, an Ocwen representative hand-delivered envelopes to Freeman's home.  Each envelope identified the sender as "Ocwen."  (*Id.* ¶ 37.)  Each envelope contained a letter stating "IMPORTANT.....PLEASE CALL MORTGAGE CO.....(800) 746-29636.....PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER.....WE ARE EXPECTING YOUR CALL TODAY."  (*Id.*)  Ultimately, Freeman retained counsel due to her concerns about Ocwen's communications.

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together.").

---

front of a document and Ocwen supplied the reverse of that same document, the information on the reverse is properly before the court at the motion to dismiss stage.  *See Levenstein*, 164 F.3d at 347.  This is not particularly helpful, however, as the court cannot ascertain if the information on the reverse of the May 3, 2013 form was presented in an identical way on the reverse of all of Ocwen's so-called statements.  This is especially true given that the documents that Freeman has attached to her complaint (Dkt. 1, Compl., at Ex. E) do not all appear to be on identical forms.

For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. DISCUSSION

Ocwen seeks to dismiss Freeman's FDCPA and FCRA claims (Counts II and II, respectively) pursuant to Rule 12(b)(6).

**A.      Freeman's FDCPA Claim (Count II)**

Ocwen contends that it is outside the ambit of the FDCPA because it is not a debt collector.  Alternatively, it contends that Freeman's allegations supporting her FDCPA claim are insufficient and that, in any event, the communications are not actionable under the FDCPA.

**1.      Is Ocwen Within the Ambit of the FDCPA Because it Is a Debt Collector?**

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . .

15 U.S.C. § 1692a(6).  However, "[t]he term 'debt collector' . . . does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person . . . "  15 U.S.C. § 1692a(6)(F)(iii).  The rationale for this exception is that for debts that are acquired from another entity, "[i]f the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt.  On the other hand, if it

simply acquires the debt for collection, it is acting more like a debt collector." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

Ocwen argues that when a defendant acquires a debt though a merger with a plaintiff's creditor, as opposed to an assignment, the debt is not obtained while it is in default so the defendant cannot be a debt collector under the FDCPA. *See, e.g.*, *Esquivel v. Bank of Am., N.A.*, No. 2:12-CV-02502-GEB, 2013 WL 682925, at *2 (E.D. Cal. Feb. 21, 2013). According to Ocwen, it acquired Freeman's debt due to its merger with American Home Mortgage. Ocwen reasons that because American Home Mortgage held Freeman's loan before she defaulted, it stands in American Home Mortgage's shoes due to the merger so it is deemed to have acquired the debt before Freeman defaulted.

The problem with this argument is that it relies on the SEC filing that Ocwen attached to its motion to dismiss to establish that Ocwen merged with American Home Mortgage. As discussed above, the substance of the SEC filing is not properly before the court in connection with a Rule 12(b)(6) motion.

In the interests of completeness, however, the court notes that Freeman does not challenge Ocwen's reading of § 1692a(6)(F)(iii). Instead, she contends that under this section of the FDCPA, a loan servicer is considered to be a debt collector if the debt at issue is in default or the acquiring entity treats it as such when it acquires the debt. *Schlosser*, 323 F.3d at 536. Freeman argues that Ocwen acted as if she had defaulted from the moment it acquired servicing rights from American Home Mortgage and thus is covered by the "treated as such" language in § 1692a(6)(F)(iii).

According to the dates in Freeman's complaint, she took out her loan in 2003, American Home Mortgage acquired the loan in 2004 when she was not in default, and she filed for bankruptcy and received a discharge in 2006. Freeman alleges that American Home Mortgage began collection efforts in 2006 and Ocwen took over those efforts when it acquired the loan in 2013. As noted above, Ocwen's position is that the "treated as such" exception is inapplicable because (1) nothing in the complaint indicates that American Home Mortgage treated Freeman's loan as if was in default in 2004 and (2) Ocwen is entitled to the 2004 date due to the purported merger. In contrast, Freeman focuses on the 2013 date and asserts generally that Ocwen treated her debt as if it was in default beginning at that time. The complaint indeed alleges that Ocwen commenced aggressive collection efforts starting in 2013. But this does not engage with Ocwen's arguments about the effect of the merger. The court cannot resolve the "treated as such" issue based on this record. If Ocwen raises the merger issue again in a procedurally proper way, Freeman should ensure that she provides a substantive response to its arguments about the date that is relevant for the purposes of § 1692a(6)(F)(iii).

Relatedly, the court notes that it finds Freeman's briefs confusing because she appears to be contending that Ocwen had no permissible basis to interact with her about money. For example, in her response to the motion to dismiss, Freeman asserts that "it is not obvious from the mortgage statements that Plaintiff has no continued debt." (Dkt. 32, Pl.'s Resp., at 7.) A lender's security interest (apparently acquired by Ocwen) in Freeman's home must have survived the discharge of Freeman's personal debts, because the discharge could not have given her clear title to her home. *See generally Lovegrove v. Ocwen Loan Servicing, LLC*, No. 7:14CV00329, 2015 WL 5042913, at *6 (W.D. Va. Aug. 26, 2015) (holding that a "bankruptcy discharge does

not extinguish a secured creditor's in rem rights as to the debtor's property; the discharge only prohibits an in personam claim against the debtor").  The court has thus proceeded based on the assumption that Freeman is arguing that Ocwen wrongfully tried to collect based on her personal liability in the mortgage, which was discharged in bankruptcy, as this is the only legally tenable reading of Freeman's complaint.  But this is not what the complaint says, as Freeman takes issue with Ocwen's belief that she owed any money whatsoever in relation to her home following the discharge.   Is Freeman's position that the discharge of her personal debt entitles her to stay—for free—in a property that is subject to a security interest?  Freeman should consider whether she wishes to stand on her current complaint, seek leave to amend to clarify this point, address the issue in discovery, or otherwise respond to this concern.

But these are issues for another day.  Ocwen's motion to dismiss based on its alleged merger, as established in the SEC filing, is denied without prejudice as procedurally improper. The court, therefore, turns to Ocwen's contention that Freeman's FDCPA claim fails on the merits.

### 2.       Sufficiency of Freeman's Allegations

The FDCPA forbids debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Ocwen contends that Freeman's FDCPA claim fails because she did not provide any details regarding the content of the alleged phone calls or the three hand-delivered envelopes and thus cannot plausibly claim that Ocwen violated § 1692d.  The court disagrees.

The clear thrust of the complaint is that Ocwen's 1,200+ telephone calls and the three envelopes were abusive efforts to collect on a debt. Freeman's allegations about the indisputably high number of alleged calls made to her cellular phone easily support a FDCPA claim based on § 1692d because they "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. Given the barrage of purported phone calls, the alleged contents of the envelopes, combined with Freeman's contention that they were allegedly hand-delivered to her home (as opposed to mailed via the United States Postal Service or a delivery service such as Federal Express), also supports an inference of oppressiveness.

Similarly, Freeman need not provide a summary of each conversation in her complaint to state an actionable FDCPA claim. *See Twombly*, 550 U.S. at 555. She has provided an illustrative summary of a call in 2014, when she alleges that she spent 40 minutes on the phone with an Ocwen representative who rejected her position about her bankruptcy discharge and insisted that Ocwen's collection efforts were proper. Ocwen can probe Freeman's recall of this conversation, as well as the approximately 360 other times that Freeman answered Ocwen's calls, in discovery. However, Ocwen's attempt to force Freeman to plead facts is unavailing.

### 3. Are the Communications Actionable Under the FDCPA?

Ocwen next argues that even if the communications are within the ambit of the FDCPA, they are not actionable because they were not made in connection with the collection of a debt. Alternatively, Ocwen argues that Freeman cannot state a claim under the FDCPA because the bankruptcy code authorized its communications with Freeman despite her bankruptcy discharge and the bankruptcy code's specific language, as opposed to the FDCPA's general prohibition against improper debt collection practices, is controlling.

### a.      Communications "In Connection With the Collection Of Any Debt"

The FDCPA "mak[es] clear that the statute does not apply to every communication between a debt collector and a debtor." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-85 (7th Cir. 2010).  Instead, to be actionable, a communication must be made "in connection with the collection of any debt." *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388 (7th Cir. 1998).  To determine if this has occurred, the court must conduct a "commonsense inquiry" by considering whether the communication contains a demand for payment, the nature of the parties' relationship, and the purpose and context of the communications between the parties. *Gburek*, 614 F.3d at 385-86.  This inquiry is inherently fact-specific. *Mavroff v. Kohn Law Firm S.C.*, No. 15-CV-837, 2015 WL 9581763, at *3 (E.D. Wis. Dec. 30, 2015).

Ocwen contends that its communications with Freeman were not made in connection with the collection of a debt as they were merely informational.  *See Cook v. Green Tree Servicing, LLC*, No. 13-CV-01189-JPG-DGW, 2016 WL 51385, at *4 (S.D. Ill. Jan. 5, 2016) (holding that "[i]nformational notices" are not communications made in connection with the collection of a debt).  As discussed above, however, the court cannot parse the meaning of any disclaimers in the letters that Ocwen sent to Freeman as the reverse sides of all of the letters are not properly before the court at the motion to dismiss stage.  In any event, the presence of a demand for payment is just one factor that is relevant when making the fact-specific determination of whether a communication falls within the ambit of the FDCPA.  *See Gburek*, 614 F.3d at 385-86; *Mavroff*, 2015 WL 9581763, at *3.  Thus, the court declines to find, as a matter of law, that all of Ocwen's communications were informational and not made in connection with the collection of a debt.  This portion of Ocwen's motion is denied.

### b. The Bankruptcy Code

The bankruptcy code provides that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover, or offset [a debt] as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). However, § 524(j) of the bankruptcy code contains an exception for "acts by a creditor that is the holder of a secured claim" if "(1) such creditor retains a security interest in real property that is the principal residence of the debtor; (2) such act is in the ordinary course of business between the creditor and debtor; and (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien." 11 U.S.C. § 524(j); *see also In re Jones*, No. 08-05439-AJM-7, 2009 WL 5842122, at *3 (Bankr. S.D. Ind. Nov. 25, 2009) (granting summary judgment because a fully developed record showed that communications from a mortgage holder to an individual who had been granted a Chapter 7 discharge fell within the § 524(j) exception covering certain security interests in real property).

Ocwen argues that §§ 1692e and 1692f of the FDCPA, which preclude "false, deceptive, or misleading" and "unfair or unconscionable" conduct in connection with the collection of a debt conflict with § 524(j) of the bankruptcy code, which Ocwen characterizes as specific statutory language that authorized its written communications with Freeman despite her bankruptcy discharge. According to Ocwen, if its "§ 524(j) account statements are determined to be 'false, deceptive, or misleading' or 'unfair or unconscionable' debt-collection communications, Ocwen would be forced to choose between exercising its rights under the bankruptcy code and risking FDCPA liability, or foregoing its bankruptcy code rights to comply with the FDCPA." (Dkt. 14, Def.'s Mot., at 19.) Ocwen thus concludes that Freeman's FDCPA

claims must be dismissed because § 524(j) trumps the FDCPA's general prohibition against improper debt collection practices.

The Seventh Circuit teaches that "[w]hen two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other — and repeal by implication is a rare bird indeed." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) (finding that the FDCPA and the bankruptcy code provided overlapping remedies to a plaintiff who alleged that a creditor negligently attempt to collect a discharged debt in violation of the automatic stay). "It takes either irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other." *Id*.

Ocwen's conflict argument is unavailing at the motion to dismiss stage because the court must accept the allegations in Freeman's complaint as true, and those allegations do not allow the court to determine if Ocwen is entitled to protection under § 524(j). First, Freeman describes the property where she resides as her "home." (Dkt. 1, Compl., ¶ 37.) However, she does not specifically allege that the real property where she resides is her principal residence. The court will not make findings of fact based on assumptions about Freeman's living arrangements.

Second, the parties have not addressed the relevant time that property must be a debtor's primary residence to fall within § 524(j)'s safe harbor. *See In re Lemieux*, 520 B.R. 361, 369 (Bankr. D. Mass. 2014) (considering location of the debtor's primary residence at the time of the post-discharge collection efforts); *Bibolotti v. Am. Home Mortgage Servicing, Inc.*, No. 4:11-CV-472, 2013 WL 2147949, at *9 (E.D. Tex. May 15, 2013) (considering the location of the debtor's primary residence as of the date she filed her bankruptcy petition). Presumably, Freeman has lived continuously at her home since 2003, when she obtained a mortgage loan

secured by the property, so this is a distinction without a difference.  But again, the court is limited to the complaint's allegations, which do not address this issue.

Third, the court cannot determine whether Ocwen acted "in the ordinary course of business" and limited its actions "to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien."  *See* 11 U.S.C. § 524(j)(3).  As discussed above, the complaint's allegations do not clearly lay out the relationship between Ocwen and Freeman, given Freeman's apparent position that Ocwen was not allowed to contact her for any reason whatsoever.  In addition, the parties have not briefed whether placing approximately 1,200 telephone calls to request payment is "in the ordinary course of business."

Fourth, in the context of a motion to dismiss, the court cannot accept Ocwen's assertion that it sent appropriate written communications to Freeman that merely asked her to make periodic payments to avoid foreclosure.[4]  Ocwen's position is at odds with Freeman's allegations about the 1,200+ calls placed to her cellular number, which she alleges she did not give to Ocwen.  In addition, the court cannot determine if Ocwen gave Freeman appropriate disclaimers during the approximately 360 conversations Freeman had with Ocwen agents when she answered her phone.  *See Dore v. Five Lakes Agency, Inc.*, No. 14 CV 6515, 2015 WL 4113203, at *2 n.4 (N.D. Ill. July 8, 2015) (noting that the summary judgment record established that a collection

---

[4] In this regard, Ocwen's citations to cases addressing motions for summary judgment are unhelpful given that the court does not have the benefit of a full record.  *See*, *e.g.*, *Lovegrove*, 2015 WL 5042913; *Bibolotti v. Am. Home Mortgage Servicing, Inc.*, No. 4:11-CV-472, 2013 WL 2147949, at *9 (E.D. Tex. May 15, 2013).

agency which called the plaintiff, who had received a bankruptcy discharge, gave her appropriate disclaimers).

Similarly, Freeman alleges that she received three hand-delivered envelopes that arrived over the course of four weeks in late 2015 that stated "IMPORTANT..... PLEASE CALL MORTGAGE CO.....(800) 746-29636.....PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER.....WE ARE EXPECTING YOUR CALL TODAY." (Dkt. 1, Compl., ¶ 37.) While Ocwen emphasizes the content of reverse side of letters that are not all properly before the court, it does not explain how describing itself as "MORTGAGE CO." in hand delivered requests for immediate payment put Freeman on notice that it was requesting periodic payments to avoid foreclosure.

The court cannot simply accept Ocwen's assertion that its communications are covered by § 524(j); the contents of the written communications sent to Freeman and the purpose and content of the telephone calls must be explored in discovery. Thus, Ocwen's citation to the bankruptcy code's safe harbor provision for certain holders of a security interest in real property does not warrant dismissal of Freeman's FDCPA claim.

**B.    Freeman's ICFA Claim (Count III)**

To state an ICFA claim, Freeman must allege that: (1) Ocwen's practices were deceptive or unfair; (2) Ocwen intended her to rely on its deceptive or unfair practice, (3) Ocwen's unfair or deceptive practice occurred in the course of conduct involving trade or commerce, and (4) Freeman incurred actual damages. *See Wheeler v. Assurant Specialty Prop.*, 125 F. Supp. 3d 834, 841-42 (N.D. Ill. 2015) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). Freeman contends that Ocwen's collection practices were unfair. *See Siegel v. Shell*

*Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) ("A plaintiff may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive."). Because an unfair practices claim is not based on fraud, it does not need to satisfy Rule 9(b)'s heightened pleading standard. *Wheeler*, 125 F. Supp. 3d at 842 (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)). Conduct is unfair if it violates public policy, is "so oppressive that the consumer has little choice but to submit," or "cause[s] consumers substantial injury." *Id.* (quoting *Siegel*, 612 F.3d at 935).

Ocwen seeks dismissal of Freeman's ICFA claim, contending that it is preempted by the bankruptcy code. Alternatively, Ocwen contends that Freeman's ICFA claim fails on the merits because it is conclusory. As a fallback to that argument, Ocwen argues that its written communications with Freeman were purely informational and thus do not violate the ICFA as a matter of law.

### 1. Does the Bankruptcy Code Preempt Freeman's ICFA Claim?

After a debtor obtains a bankruptcy discharge, "creditors are enjoined from attempting to collect discharged debts 'as a personal liability of the debtor.'" *Dore*, 2015 WL 4113203, at *2 (quoting 11 U.S.C. § 524(a)(2)). "[T]he sole remedy for a violation of [a bankruptcy discharge injunction] is a contempt action brought in the bankruptcy court that issued the order of discharge." *Asufrin v. Roundpoint Mortgage Serv. Corp.*, No. 15 C 9077, 2016 WL 1056669, at *7 (N.D. Ill. Mar. 17, 2016) (citing *Cox v. Zale Del., Inc.*, 239 F.3d 910, 917 (7th Cir. 2001)). Freeman reopened her bankruptcy case to pursue a claim against Ocwen based on its alleged violation of the discharge injunction. This court withdrew the reference to the bankruptcy court

as to this claim and the parties are currently pursuing discovery regarding whether Ocwen violated the discharge injunction.[5]

Freeman contends that Ocwen's efforts (its telephone calls, letters, and the three hand-delivered envelopes) to induce her to pay money following her bankruptcy discharge violate the ICFA. In response, Ocwen argues that the bankruptcy code preempts Freeman's ICFA claim because the ICFA claim is inextricably intertwined with Freeman's claim that Ocwen violated the discharge injunction entered by the bankruptcy court.

State law claims are preempted if they "arise under" the bankruptcy code, are "related to" a bankruptcy case, or "arise in" bankruptcy. *In re Repository Techs., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010); *Alabi v. Homecomings Fin. LLC*, No. 09-CV-4757, 2011 WL 4398140, at *6 (N.D. Ill. Sept. 21, 2011) (collecting cases). Claims "arise under" the bankruptcy code if they "depend on a right created or determined by a statutory provision of title 11." *In re Repository Techs.*, 601 F.3d at 719 (internal quotation marks omitted). Claims are "related to" a bankruptcy case if they affect the amount of property available for distribution or the allocation of property among creditors. *In re Tolomeo*, No. 15 C 8118, 2015 WL 8741730, at *5 (N.D. Ill. Dec. 15, 2015). Claims "arise in" a bankruptcy case if they can exist only in a bankruptcy case and concern the administration of the debtor's estate, such as questions about the validity, extent or priority of liens and whether to discharge a deb or turn over of property of the bankruptcy estate. *In re Repository Techs.*, 601 F.3d at 719.

---

[5] Freeman's claim for a violation of the discharge injunction is before the court because it withdrew the reference. However, it does not appear in her complaint. She must amend her complaint so that it contains all of her claims.

Ocwen contends that Freeman's IFCA claim arises under and is related to her Chapter 7 case since "it is intricately related to and wholly dependent on asserted violations of the bankruptcy code." (Dkt. 33, Def.'s Reply, at 12.) However, to establish that a state law (here, the ICFA) "is preempted because it conflicts with federal law, defendant must prove either that (1) it is impossible to comply with both the challenged state law . . . and federal law; or (2) the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Ready Fixtures Co. v. Stevens Cabinets*, 488 F. Supp. 2d 787, 789 (W.D. Wis. 2007) (rejecting motion to dismiss based on the defendant's argument that bankruptcy law preempted Wisconsin's insolvency preference statute) (citing *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372-73 (2000), and *Hillsborough Cnty., Florida v. Automated Medical Labs., Inc.*, 471 U.S. 707, 712 (1985)).

Given the dearth of cases addressing whether the bankruptcy code can preempt the ICFA, the court turns to FDCPA cases, as the FDCPA and the ICFA are conceptually similar because they both impose liability for damages caused by unfair practices. *See Osborn v. J.R.S.-I., Inc.*, 949 F. Supp. 2d 807, 813 (N.D. Ill. 2013). A plaintiff can seek relief under the FDCPA while simultaneously contending that a creditor violated a discharge injunction because the FDCPA and the bankruptcy code "are not so incompatible or contradictory that they serve to repeal one another, and instead complement each other." *Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 WL 1029396, at *3 (S.D. Ill. Mar. 15, 2016) (citing *Randolph*, 368 F.3d at 731).

Specifically, according to the Seventh Circuit:

a debtor can bring an FDCPA claim against a debt collector that demands payment that is not really "due" by virtue of the automatic bankruptcy stay or a discharge injunction . . . . For example, remedies under the bankruptcy code are

-17-

only available for willful violations, that is, where a creditor or debt collector knows its demand is forbidden, but not for other violations for which the FDCPA would provide a remedy, although a less substantial one. It further notes that the bankruptcy code remedies are not so "comprehensive" after all because they do not address numerous topics covered by the FDCPA such as, for example, class actions, maximum recovery, attorney's fees, and a limitations period. The [*Randolph* court] concluded that both remedial systems can coexist.

*Id*. (internal citations omitted).

The same can be said for the ICFA. The court must accept Freeman's allegations as true for the purpose of Ocwen's motion to dismiss. It is possible for Ocwen to send out a notice that complies with § 524(j)'s safe harbor as well as the ICFA. But that is not what Freeman alleges occurred, as she contends that the letters, hand delivered envelopes referencing a "MORTGAGE CO.," and the 1,200+ telephone calls were unfair and confusing in light of her bankruptcy discharge. *See Whalen v. Specialized Loan Servicing, LLC*, — F. Supp. 3d —, No. 15-CV-410-BBC, 2016 WL 126919, at *5 (W.D. Wis. Jan. 11, 2016) (denying creditor's motion to dismiss a FDCPA claim based on § 524(j) because § 524(j) is a "red herring" given that the FDCPA "does not prohibit creditors from collecting a debt; it prohibits them from using 'false, deceptive or misleading' methods when making representations in connection with the collection of a debt"). Based on Freeman's allegations, "[b]ecause [Ocwen] does not argue that the bankruptcy code gave it the right to enforce its security interest in a way that is false, deceptive or misleading, there is no risk that a ruling in favor of [Freeman] will undermine [Ocwen's] rights under the bankruptcy code." *Id*. Thus, Ocwen has not shown that it would be impossible to comply with the ICFA and the bankruptcy code.

Ocwen also does not explain how the ICFA's prohibition against unfair collection practices undercuts the narrow remedy of seeking a contempt order based on an alleged violation

of the discharge injunction. *See Price v. Seterus, Inc.*, No. 15 C 7541, 2016 WL 1392331, at *6

(N.D. Ill. Apr. 8, 2016) (distinguishing between a claim based on the alleged violation of a

bankruptcy discharge order and an ICFA claim based on the plaintiff's contention that the

defendant unfairly and deceptively attempted to induce him to make payments on an allegedly

uncollectible debt); *see also In re Waggett*, No. 09-4152-8- SWH, 2015 WL 1384087, at *8

(Bankr. E.D.N.C. Mar. 23, 2015) (denying motion to dismiss state claims based on preemption

when the claims "are premised on other grounds than just a violation of the discharge injunction,

and are instead premised on allegations of continuous, negligent, deceptive and unlawful debt

collection activities of the defendants which occurred" after a bankruptcy case was closed);

*Albright v. Beneficial W. Virginia, Inc.*, No. 3:15-CV-52, 2015 WL 8664281, at *2 n.6 (N.D.W.

Va. Dec. 11, 2015) (state law claims that seek relief other than a contempt order based on an

alleged violation of a discharge injunction are not preempted).

 In sum, Ocwen's motion to dismiss Freeman's ICFA claim based on preemption is

denied.

###   2.  Ocwen's Contention that Freeman's ICFA Claim Fails on the Merits

 Ocwen's two alternative arguments about the merits of Freeman's ICFA claim can be

easily dispatched. Ocwen argues that Freeman did not allege what transpired during the phone

calls or describe the complete contents of the three hand-delivered packages and thus has failed

to state a plausible ICFA unfairness claim. Federal notice pleading standards, rather than Illinois

fact pleading requirements, apply to ICFA claims raised in federal court. *Windy City Metal*

*Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

"Because neither fraud nor mistake is an element of unfair conduct under [the ICFA], a cause of

action for unfair practices under the [ICFA] need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Id.*

Ocwen's attack on Freeman's ICFA claim is premised on its contention that its actions were lawful and appropriate efforts to provide information pursuant to § 524(j). The court cannot make this finding at the motion to dismiss stage given Freeman's allegations that:

- Ocwen used "false pretenses and deception to attempt to collect a debt that was not owed at the time the demands for payment were made" because it attempted to force her to make mortgage payments even though the loan had been discharged. (Dkt. 1, Compl., ¶ 84.)

- Ocwen unfairly sought to collect a discharged loan "through constant misleading letters, statements, continuous phone calls to her cellular phone, and sending representatives to her home to coerce her into making a payment on a discharged debt." (*Id.* ¶ 85.)

- Ocwen "led [Freeman] to believe that her bankruptcy had no legal effect" by "bull[ying her] into near submission with perpetual unfair and deceptive conduct through lies, harassment, intimidation, and deception regarding the collectability of the subject loan," refusing to stop calling her despite at least 360 oral requests, and sending "representatives to [her] home to intimidate and coerce her into paying a discharged debt." (*Id.* ¶¶ 86-88.)

As with Freeman's FDCPA claim, these allegations place Ocwen on notice regarding the basis for her ICFA claim and plausibly suggest that she is entitled to relief. *See Twombly*, 550 U.S. at 555-56. Thus, they are sufficient to survive a motion to dismiss. *See Blanton v. Roundpoint Mortgage Servicing Corp.*, No. 15 C 3156, 2016 WL 3364790, at *9 (N.D. Ill. June 17, 2016) (denying motion to dismiss an ICFA claim when the plaintiff alleged that the defendants deceived her by attempting to "collect unauthorized fees and charges from [her] and to foreclose on [her] home"); *see also Wong v. Whole Foods Mkt. Grp., Inc.*, No. 15 C 848, 2015 WL 10852508, at *2 (N.D. Ill. June 15, 2015) (holding that the plaintiff's allegation that the

defendant supermarket had charged excessive sales tax survived a motion to dismiss because that "may constitute an unfair practice under the ICFA"). Ocwen's contention that Freeman needs to plead more facts to state a claim for which relief may be granted is, therefore, unavailing.

As a fallback, Ocwen contends that even if the court finds that Freeman's IFCA claim is plausible, it should still be dismissed because the "account statements" that it sent to Freeman were purely informational and thus do not show that it unfairly sought to collect on a discharged debt. As discussed above, the court cannot determine this issue at the motion to dismiss stage because Freeman has plausibly alleged that Ocwen did, in fact, try to collect on her discharged debt. Moreover, Ocwen's focus on the purported disclaimers on the reverse side of the letters it sent fails to engage with Freeman's allegations about the 1,200+ telephone calls (including approximately 360 conversations) and the hand-delivered envelopes instructing Freeman to "PLEASE CALL MORTGAGE CO.....(800) 746-29636.....PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER.....WE ARE EXPECTING YOUR CALL TODAY." (Dkt. 1, Compl., ¶ 37.) In sum, Ocwen's arguments about the legal significance of its actions are premature since the parties dispute what Ocwen did vis-a-vis Freeman's discharged loan. For all of these reasons, Ocwen's motion to dismiss Freeman's ICFA claim is denied.

## IV. CONCLUSION

Ocwen's motion to dismiss [14] is denied in its entirety. Because this court withdrew the reference regarding Freeman's claim that Ocwen violated the discharge injunction, Freeman must amend her complaint so that it includes this claim. Freeman shall file an amended complaint by July 11, 2016. Ocwen shall answer by August 1, 2016. This case is set for status on August 10,

2016, at 9:30 a.m.

Date:   June 27, 2016
                                    _____/s/_____

                                    Joan B. Gottschall
/cc                                 United States District Judge